

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2021 NOV 18 P 2 48

CAROL L. MICHEL
CLERK

**SEALED**

**FELONY**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** **21 - 153** |
| **v.** | * | **SECTION:** **SECT. 1 MAG. 4** |
| **JERRY TRABONA** **KRISTIAN HART** | * | **VIOLATIONS:** 18 U.S.C. § 371 52 U.S.C. § 10307(c) 18 U.S.C. § 2 |
| | * | |

\*      \*      \*

**INDICTMENT FOR CONSPIRACY TO COMMIT VOTE BUYING,**
**VOTE BUYING, AND AIDING AND ABETTING**

The Grand Jury charges that:

At all times relevant to this indictment:

**INTRODUCTION**

1.      Tangipahoa Parish, Louisiana was a parish located in southeast Louisiana within the Eastern District of Louisiana.

2.      Amite City, Louisiana was located in Tangipahoa Parish.

3.      Defendant **JERRY TRABONA ("TRABONA")** was a resident of Amite City, Louisiana, and was the Chief of Police of the Amite City Police Department from 2005 to 2020.

4.      Defendant **KRISTIAN HART ("HART")** was a resident of Amite City, Louisiana, and was a sitting councilmember of the Amite City Council in Amite City, Louisiana.

X Fee LOA
___Process_____
X Dktd _____
___ CtRmDep ___
___ _____

5.      PERSON A was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office, including **TRABONA**, in Tangipahoa Parish during the 2016 election.

6.      PERSON B was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office in Tangipahoa Parish, including **TRABONA**, during the 2016 election.

7.      PERSON C was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office in Tangipahoa Parish, including **HART** and **TRABONA**, during the 2016 election.

8.      PERSON D was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office in Tangipahoa Parish, including **HART** and **TRABONA**, during the 2016 election.

9.      PERSON E was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office in Tangipahoa Parish, including **TRABONA**, during the 2016 election.

10.     PERSON F was a resident of Tangipahoa Parish and worked as a vote buyer to buy votes for candidates running for office in Tangipahoa Parish, including **HART** and **TRABONA**, during the 2016 election.

11.     PERSON G was a resident of Tangipahoa Parish.

12.     The early voting period for Louisiana's 2016 Open Primary/Presidential/ Congressional Election ("2016 Open Primary Election"), held on November 8, 2016, commenced on October 25, 2016, and ended on November 1, 2016.

13.     All statewide and local candidates in Louisiana are elected by majority vote. For races in which no candidate received a majority in the November 8, 2016 Open Primary Election, the top two candidates who received the most votes advanced to a runoff election (called the "Open General/Congressional" election in Louisiana).

14.     The early voting period for Louisiana's 2016 Open General/Congressional Election ("2016 Open General Election"), held on December 10, 2016, commenced on November 26, 2016, and ended on December 3, 2016.

15.     The 2016 Open Primary held in Louisiana, including Tangipahoa Parish, on November 8, 2016, involved contests for federal office, including the elections for the President of the United States, the United States Senate, and the United States House of Representatives.

16.     The 2016 Open General Elections held in Louisiana, including Tangipahoa Parish, on December 10, 2016, involved a contest for federal office, including an election for the United States Senate.

17.     In 2016, **TRABONA** ran for re-election as the Amite City Chief of Police and was on the ballot during 2016 Open Primary Election.

18.     In 2016, **HART** ran for a seat on the Amite City Council and was on the ballot during both the 2016 Open Primary Election and the 2016 Open General Election.

## COUNT 1
### (Conspiracy to Commit Vote Buying)

19.     Paragraphs 1 through 18 are realleged and incorporated herein by reference.

20.     Beginning at a time unknown but at least by January 1, 2016, and continuing through at least on or about December 19, 2016, in the Eastern District of Louisiana and elsewhere, the defendants, **KRISTIAN HART** and **JERRY TRABONA**, did unlawfully, willfully, and

3

knowingly combine, conspire, confederate, and agree with each other, PERSONS A through F, and others known and unknown, to commit offenses against the United States, that is the federal crime of paying and offering to pay for votes when a federal candidate was on the ballot, in violation of Title 52, United States Code, Section 10307(c).

## A.    **OBJECTS OF THE CONSPIRACY**

21.    It was an object of the conspiracy for the defendants and others to pay voters to cast their votes for specific candidates on the ballot in Tangipahoa Parish during Louisiana's 2016 Open Primary Election and 2016 Open General Election, in violation of Title 52, United States Code, Section 10307(c).

22.    It was also an object of the conspiracy to conceal the co-conspirators' unlawful conduct.

## B.    **MANNER AND MEANS**

23.    The manner and means of the conspiracy included, but were not limited to, the following:

a.    **HART** and **TRABONA** communicated via telephone and met in person with individuals residing in Tangipahoa Parish and elsewhere and gave them money to buy votes for **TRABONA** and **HART** in 2016.

b.    **HART** and **TRABONA** provided individuals who were buying votes for them and individuals who were selling their votes with sample ballots and lists of candidate numbers for whom the voters should cast their votes.

c.    In addition to coordinating with vote buyers to purchase votes of prospective voters during the 2016 election in Tangipahoa Parish, **HART** individually recruited voters, drove voters to the polling locations, and paid voters

to vote for certain candidates, including himself and **TRABONA**, in the 2016 election.

      d.    To conceal the purpose of the payments to individuals hired to buy votes, **TRABONA** had those individuals sign contracts falsely stating that they would not "make any overture of any kind to any voter or other person of financial award or other benefit in exchange for a vote."

**C.**    **OVERT ACTS**

24.    In furtherance of the conspiracy, and to accomplish its purpose, the defendants, **HART** and **TRABONA**, PERSONS A through F, and others known and unknown to the Grand Jury, committed, and caused to be committed in the Eastern District of Louisiana, and elsewhere, the following overt acts:

      a.    Prior to the early voting period to the 2016 Open Primary Election, PERSON A traveled to **TRABONA's** office at the Amite City Police Department to meet with **TRABONA**.

      b.    Once there, **TRABONA** gave PERSON A $500 in the form of a check from **TRABONA's** campaign, dated October 20, 2016, to be used to pay voters to vote for **TRABONA**.

      c.    PERSON A subsequently hired at least one individual to buy votes for **TRABONA** and gave the individual approximately $100 to buy votes.

      d.    Prior to the early voting period of the 2016 Open Primary Election, **TRABONA** asked PERSON B to work for his campaign for Chief of Police of Amite City, Louisiana.

5

e.      On or about October 24, 2016, **TRABONA** contacted PERSON B to tell PERSON B that **TRABONA** had a "package" ready for PERSON B.

f.      PERSON B traveled to the Amite City Police Department, where **TRABONA** provided PERSON B with a check for $500, issued to a family member of PERSON B, to be used to pay voters to vote for **TRABONA**. **TRABONA** also provided PERSON B with **TRABONA's** candidate number to be included on a sample ballot to be provided to prospective vote sellers.

g.      On or about October 25, 2016, PERSON B identified approximately five voters whom PERSON B transported to the polls. PERSON B provided the voters with a list of candidate numbers to vote for that contained **TRABONA's** name along with other candidates running for local offices. PERSON B paid each of the approximately five voters $10 in cash.

h.      PERSON B then drafted a list of the individuals that PERSON B paid to vote. PERSON B delivered this list to **TRABONA** in his office at the Amite City Police Department. **TRABONA** paid PERSON B approximately $20 in cash for each voter that PERSON B had paid to vote.

i.      Prior to the November 8, 2016 election day, PERSON B again contacted **TRABONA** about working for **TRABONA** in the 2016 election. **TRABONA** told PERSON B that **HART** was "handling everything" for **TRABONA's** campaign.

j.      Shortly after, **HART** stopped PERSON B in Amite City, Louisiana. During that meeting, **HART** provided PERSON B with approximately $300 in cash for PERSON B's work, which included buying votes for certain candidates,

including **HART** and **TRABONA**.  **HART** told PERSON B that the money was from **TRABONA**.

      k.      Between approximately January 2016 and October 25, 2016, **HART** approached PERSON C in Amite City, Louisiana, and advised PERSON C that he was working for **TRABONA** and was also running for Amite City Council.  **HART** told PERSON C that **TRABONA** needed PERSON C to "haul voters again" for **TRABONA's** 2016 campaign.  PERSON C understood this to mean that **TRABONA** and **HART** wanted PERSON C to drive voters to the polls and pay them for their vote.  PERSON C had this understanding because, prior to the early voting period in 2012, **TRABONA** and another individual met with PERSON C. During that meeting, **TRABONA** and the other individual explained to PERSON C that they would hire PERSON C to pick up potential voters, transport them to the polls, provide them with a sample ballot containing a list of certain candidates to vote for, including **TRABONA**, and pay them after they had voted.  In 2012, **TRABONA** delivered to PERSON C $200 in cash and a stack of ballots that contained a list of certain candidates to vote for, including **TRABONA**.

      l.      After the 2016 meeting with **HART**, PERSON C travelled to the Amite City Police Station to speak with **TRABONA**.  **TRABONA** advised PERSON C that PERSON C would receive money to distribute to the potential voters a couple of days in advance of the early voting period and that PERSON C should see **HART** to get that money.

      m.      After meeting with **TRABONA**, PERSON C told **HART** that **TRABONA** had directed PERSON C to **HART** for money to pay voters.  **HART**

provided PERSON C with $200 in $20 bills from a roll of cash that **HART** kept in the console of the pickup truck that **HART** was driving.  **HART** also provided PERSON C with a stack of paper ballots that contained the names of several candidates running for office in the 2016 election, including **HART** and **TRABONA**.  **HART** directed PERSON C to keep a list of the voters PERSON C paid to vote.

n.      During the early voting period for the 2016 Open Primary Election, **HART** travelled to PERSON C's residence in Amite City, Louisiana.  PERSON C met **HART** at his vehicle and **HART** provided PERSON C with two $100 bills.

o.      On or about October 25, 2016, **HART** met with PERSON D in the parking lot of a grocery store in Amite City, Louisiana.  On behalf of himself and **TRABONA**, **HART** provided PERSON D with $200 in cash to pay voters and slips containing the names and candidate numbers of several candidates running for office, including **HART**, **TRABONA**, and others.  **HART** also directed PERSON D to maintain a list of the voters that PERSON D paid to vote.

p.      Between approximately January 2016 and October 25, 2016, **TRABONA** travelled to PERSON E's residence in Amite City, Louisiana. **TRABONA** solicited PERSON E's participation in his campaign for reelection for Amite City Chief of Police. **TRABONA** told PERSON E to meet him at his office at the Amite City Police Station.  PERSON E traveled to the Amite City Police Station, where **TRABONA** provided PERSON E with a check for $200 to work for his campaign.

8

q.      Thereafter, **TRABONA** traveled to PERSON E's residence in Amite City, Louisiana. **TRABONA** delivered $200 in cash to PERSON E and directed PERSON E to give voters that PERSON E drove to the polls $10 to vote. PERSON E informed **TRABONA** that some voters wanted $20, and **TRABONA** told PERSON E that PERSON E could give them $20. **TRABONA** also gave PERSON E cards containing **TRABONA's** name and candidate number.

r.      During the early voting period in 2016, PERSON E transported approximately four voters to the polls, told them PERSON E was working for **TRABONA**, and paid them $10 or $20 to vote. PERSON E recorded the names of the individuals whom PERSON E paid in a notebook.

s.      PERSON E then returned to the Amite City Police Station and met with **TRABONA**. PERSON E attempted to return the remaining cash, and **TRABONA** told PERSON E to keep the remaining money. PERSON E left the notebook containing the voters' names with **TRABONA**.

t.      Prior to the early voting period for the 2016 Open Primary Election, **HART** travelled to PERSON F's residence in Amite City, Louisiana. **HART** solicited PERSON F's participation as a vote buyer and PERSON F agreed to work with **HART**.

u.      During the early voting period for the 2016 Open Primary, **HART** returned to PERSON F's residence and provided PERSON F with $300 in cash and a card containing candidate numbers, including **TRABONA's** candidate number. **HART** directed PERSON F to pay each voter $20 and to direct the voters to vote

9

for the individuals listed on the card. **HART** also instructed PERSON F to keep a list of the individuals that PERSON F paid to vote and to return it to him.

  v.  During the early voting period for the 2016 Open Primary Election, PERSON F transported several voters to the polls and paid them to vote. Thereafter, PERSON F met **HART** at a park in Amite City, Louisiana, where **HART** provided PERSON F with $20 for each individual PERSON F had paid to vote.

  w.  On or about October 24, 2016, **HART** traveled to PERSON G's residence in Amite City, Louisiana, where **HART** told PERSON G to be ready to be driven to the polls the following day.

  x.  On or about October 25, 2016, **HART** travelled to PERSON G's residence and transported PERSON G to PERSON G's polling location in Amite City, Louisiana. **HART** provided PERSON G with a list containing candidate numbers and directed PERSON G to cast PERSON G's votes for the candidates whose numbers were listed.

  y.  After PERSON G voted, **HART** provided PERSON G with $20 in cash.

  z.  Between on or about November 26, 2016, through on about December 3, during the early voting period for the 2016 Open General Election, **HART** provided PERSON D with $100 in cash to purchase votes for **HART** during the early voting period of the 2016 Open General election.

  aa.  PERSON D subsequently used the money to pay voters in exchange for their votes for **HART**.

bb.     On or about November 25, 2016, prior to the early voting period for the 2016 Open General Election, **HART** again travelled to PERSON G's residence and directed PERSON G to be ready the following day to be picked up to vote.

cc.     On or about November 26, 2016, **HART** travelled to PERSON G's residence, picked up PERSON G, and drove PERSON G to PERSON G's polling location in Amite City, Louisiana.   **HART** provided PERSON G with a list containing candidate numbers and directed PERSON G to vote for the candidate numbers listed.  After PERSON G voted, **HART** provided PERSON G with $20 in cash and drove PERSON G to a store in Amite City, Louisiana.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (Vote Buying and Aiding and Abetting)

25.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

26.     Between on or about October 25, 2016, through on or about November 1, 2016, in Tangipahoa Parish, Louisiana, in the Eastern District of Louisiana, the defendant, **JERRY TRABONA**, together with others known and unknown, including PERSON A, did knowingly and willfully aid and abet the payment and offers of payment by PERSON A and others to voters in Tangipahoa Parish for voting in an election in which a candidate for federal office was on the ballot, in violation of Title 52, United States Code, Section 10307(c) and Title 18, United States Code, Section 2.

## COUNT 3
### (Vote Buying and Aiding and Abetting)

27.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

11

28.     Between on or about October 25, 2016, through on or about November 1, 2016, in Tangipahoa Parish, Louisiana, in the Eastern District of Louisiana, the defendant, **JERRY TRABONA**, together with others known and unknown, including PERSON B, did knowingly and willfully aid and abet the payment and offers of payment by PERSON B to voters in Tangipahoa Parish for voting in an election in which a candidate for federal office was on the ballot, in violation of Title 52, United States Code, Section 10307(c) and Title 18, United States Code, Section 2.

## COUNT 4
### (Vote Buying and Aiding and Abetting)

29.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

30.     Between on or about October 25, 2016, through on or about November 1, 2016, in Tangipahoa Parish, Louisiana, in the Eastern District of Louisiana, the defendant, **JERRY TRABONA**, together with others known and unknown, including PERSON E, did knowingly and willfully aid and abet the payment and offers of payment by PERSON E to voters in Tangipahoa Parish for voting in an election in which a candidate for federal office was on the ballot, in violation of Title 52, United States Code, Section 10307(c) and Title 18, United States Code, Section 2.

## COUNT 5
### (Vote Buying and Aiding and Abetting)

31.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

32.     Between on or about November 26, 2016, through on or about December 3, 2016, in Tangipahoa Parish, Louisiana, in the Eastern District of Louisiana, **KRISTIAN HART**, together with others known and unknown, including PERSON D, did knowingly and willfully aid and abet the payment and offers of payment to voters by PERSON D in Tangipahoa Parish for voting in an election in which a candidate for federal office was on the ballot, in violation of Title 52, United States Code, Section 10307(c) and Title 18, United States Code, Section 2.

## COUNT 6
### (Vote Buying and Aiding and Abetting)

33.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

34.     On or about November 26, 2016, in Tangipahoa Parish, Louisiana, in the Eastern

District of Louisiana, the defendant, **KRISTIAN HART**, did knowingly and willfully pay and

offer payment to PERSON G in Tangipahoa Parish for voting in an election in which a candidate

for federal office was on the ballot, in violation of Title 52, United States Code, Section 10307(c)

and Title 18, United States Code, Section 2.

A TRUE BILL.

DUANE A. EVANS
UNITED STATES ATTORNEY


M. IRENE GONZALEZ
Assistant United States Attorney
Louisiana Bar Roll No. 18915

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
CRIMINAL DIVISION, U.S. DEPT. OF JUSTICE


MICHAEL N. LANG
ROSALEEN O'GARA

New Orleans, Louisiana
November 18, 2021

FORM OBD-34

No._____

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

**JERRY TRABONA**
**KRISTIAN HART**

## INDICTMENT FOR CONSPIRACY TO COMMIT VOTE BUYING, VOTE BUYING, AND AIDING AND ABETTING

**VIOLATIONS: 18 U.S.C. § 371; 52 U.S.C. § 10307(c);**
**18 U.S.C. § 2**

A true bill.

_____

Filed in open court this _____

_____ day of

_____ A.D. 2021.

_____
Clerk

Bail, $ _____

_____
M. IRENE GONZALEZ
ASSISTANT UNITED STATES ATTORNEY